**In re COMMERCIAL MOTOR FREIGHT, INC. OF INDIANA, Debtor.**

**Bankruptcy No. IP 82–3872–RA.**

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

Jan. 20, 1983.

Edward B. Hopper, II, Indianapolis, Ind., for debtor.

Frederick W. Dennerline, III, Indianapolis, Ind., for Unions.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ENTRY ON APPLICATION FOR APPROVAL OF NOTICE OF REJECTION OF EXECUTORY CONTRACTS

NICHOLAS W. SUFANA, Bankruptcy Judge.

This matter came on for hearing on November 2, 1982, upon the Application for approval of Notice of Rejection of Executory Contracts filed by the debtor in possession, Commercial Motor Freight, Inc., of Indiana on October 1, 1982, and pursuant to notice issued to the parties on October 15, 1982.

At the hearing, Commercial Motor Freight was represented by counsel, Edward B. Hopper, Gary Lynn Hostetler, George Hopper, Alki E. Scopelitis and Michael D. McCormick. The Teamster Local Union Nos. 89, 100, 135, 144, 364, 413, 414, 543 and 957, the Teamsters National Freight Industry Negotiating Committee and the Indiana Conference of Teamsters (hereinafter Union) were represented by counsel, Frederick W. Dennerline, III, and Edward J. Fillenwarth, Jr. The International Association of Machinists, Local Lodges No. 681, 804 and 1741 (hereinafter I.A.M.) were represented by counsel, Julie Z. Schmitt. Also appearing were Barry Beldin, counsel for the Unofficial Creditors' Committee, and David L. Dunlap, counsel for Trailmobile, Inc.

Pursuant to stipulation, the application for approval of rejection of executory contracts between Commercial Motor Freight and I.A.M. was segregated and will be heard at a later time. It was further determined that evidence adduced at the November 1, 1982 hearing on Commercial Motor Freight's application for injunctive relief (A.P. 82–1339) would be deemed to have been tendered and admitted at the instant hearing.

At the conclusion of the hearing, the parties were requested to file proposed findings of fact, conclusions of law, and memo-

randa of law by November 15, 1982. Commercial Motor Freight filed its proposed findings of fact and conclusions of law on November 8, 1982, and its memorandum of law on November 15, 1982. The Union filed its proposed findings of fact, conclusions of law, and memorandum of law on November 16, 1982.

And the court, having examined the pleadings and the evidence, having considered the arguments of the parties, and being duly advised in the premises, now enters the following findings of fact:

## FINDINGS OF FACT

1. That on October 1, 1982, Commercial Motor Freight filed a voluntary Petition pursuant to Chapter 11 of the Bankruptcy Code;

2. That Commercial Motor Freight, a freight hauling company, has been operating for some years under various collective bargaining agreements (hereinafter labor contracts) with the Union, and that the labor contracts in effect on October 1, 1982, the date of filing, were adopted on May 16, 1982;

3. That further on October 1, 1982, subsequent to its filing of the Chapter 11 Petition, Commercial Motor Freight filed notice of its intent to reject labor contracts, and an application for court approval of said notice of rejection;

4. That Commercial Motor Freight has not operated profitably since 1978;

5. That the operating losses sustained by Commercial Motor Freight since 1979 are as follows:

1979:  $  380,572
1980:  $  742,000
1981:  $1,432,947
1982:  $2,702,547 (January 1, 1982 to
                  September 11, 1982);

6. That in 1982, Commercial Motor Freight has sustained an average daily loss of approximately $15,000;

7. That for the years 1980, 1981, and 1982, labor costs have consumed, by period, from 66% to 85% of the gross revenues generated by Commercial Motor Freight's freight hauling activity;

8. That according to testimony, labor costs cannot exceed 55% of gross revenues for Commercial Motor Freight to operate profitably;

9. That factors other than labor costs have contributed to Commercial Motor Freight's financial condition, including: the deregulation of the trucking industry, which has forced Commercial Motor Freight to lower freight rates to remain competitive; unfavorable economic conditions, which have reduced demand for freight hauling; an unsuccessful business transaction with another trucking company, Commercial-Lovelace Co., Inc.; and alleged misappropriation of corporate assets and mismanagement by the former owners of Commercial Motor Freight;

10. That despite the presence of other factors contributing to Commercial Motor Freight's poor financial condition, the labor costs required by the labor contracts at issue herein constitute a significant factor in Commercial Motor Freight's financial condition;

11. That the previous labor contracts between Commercial Motor Freight and the union were adopted on April 1, 1979, and expired on March 31, 1982;

12. That certain unfair labor practice charges, arising out of the negotiations preceeding the adoption, on May 16, 1982, of the labor contracts at issue herein, were filed against Commercial Motor Freight;

13. That said unfair labor charges were withdrawn, pursuant to a Settlement Agreement reached on July 27, 1982, whereby Commercial Motor Freight agreed to repay the affected employees' lost wages and benefits that had accrued since April 1, 1982;

14. That Commercial Motor Freight, at all relevant times herein, employs approximately 300 persons, and that approximately 240, or 80%, of the employees are union employees covered under the labor contracts at issue herein;

15. That on several occasions prior to October 1, 1982, employees have demonstrated cooperation in assisting Commercial Motor Freight in alleviating its obligations under the labor contracts by making various concessions, including: an Earnings Participation Plan, effective July, 1981 through April 1, 1982; a 15% wage-deferral plan, effective June 21, 1982; and a reduction in hours by clerical employees, from 40 hours per week to 35 hours per week;

16. That the directors of Commercial Motor Freight made the decision to seek relief under Chapter 11 of the Bankruptcy Code on September 17, 1982, and thereafter did not contact the Union for the purpose of attempting to obtain relief from the provisions of the various labor contracts;

17. That on October 3, 1982, Commercial Motor Freight convened a meeting of its employees wherein Commercial Motor Freight informed the employees of the filing of the Petition in bankruptcy and of its intention to seek rejection of its labor contracts; additionally, Commercial Motor Freight informed the employees of its imposition of the following changes in wages and benefits, to be effective the next day, October 4, 1982:

  (a) the reduction of union and non-union wages by 25%;
  (b) the cessation of employer contributions to the Central States, Southeast and Southwest Areas Health and Welfare and Pension Plans; that alternative health and hospitalization insurance benefits would be made available to the affected employees; and that no provision for pension benefits would be made for the affected employees;
  (c) the reduction of paid vacations by one week;
  (d) the elimination of sick pay; and
  (e) the elimination of paid personal days and birthdays;

18. That subsequent to October 3, 1982, Commercial Motor Freight laid off several employees out of seniority order, contrary to applicable contractual provisions, and that several of the laid off employees are nearing retirement;

19. That Commercial Motor Freight's major competitors, with one exception, operate under labor contracts similar to those Commercial Motor Freight seeks to reject;

20. That no evidence was presented concerning the financial condition of said competitors;

21. That since 1980, Commercial Motor Freight has been forced to liquidate assets, including equipment and real estate holdings;

22. That in an effort to generate business, Commercial Motor Freight has reduced its rates on all freight outbound from Indianapolis by 25%;

23. That Commercial Motor Freight came under its present ownership in May, 1982; and

24. That on July 17, 1982, the five officer-owners of Commercial Motor Freight each received annual salary increases of $12,000; and that, additionally, the directors of Commercial Motor Freight made provision for the payment of a director's fee of $2,500 per quarter;

Based upon the foregoing findings of fact, the court now enters the following conclusions of law:

## CONCLUSIONS OF LAW

1. That the court has jurisdiction over the parties and the subject matter;

2. That the labor contracts at issue herein are executory contracts and may, with the approval of the court, be rejected or assumed by the debtor in possession, Commercial Motor Freight. Bankruptcy Code §§ 365(a), 1107(a); *In re Bildisco*, (3d Cir. 1982) 682 F.2d 72;

3. That in seeking this court's approval of its rejection of an executory contract, the debtor in possession, as the moving party, bears the burden of proof;

4. That the appropriate test to be applied by this court in considering whether to approve the application for rejection of collective bargaining agreements is as follows:

"[T]he debtor in possession must first demonstrate that the continuation of the collective bargaining agreement would be burdensome to the estate; that once this threshold determination has been made the debtor in possession must make a factual presentation sufficient to permit the bankruptcy court to weigh the competing equities; that the polestar is to do equity between claims which arise under the labor contract and other claims against the debtor; that, in this, the court must consider the rights of covered employees as supported by the national labor policy as well as the possible 'sacrifices which other creditors are making' in the effort to bring about a successful reorganization, [*Group of Institutional Investors v. Chicago, Milwaukee St. Paul & Pacific R.R. Co.*, 318 U.S. 523, 549–51, 63 S.Ct. 727, 742–43, 87 L.Ed. 959 (1943)]; and that the court must make a reasoned determination that rejection of the labor contract will assist the debtor in possession or the trustee to achieve a satisfactory reorganization."

*In re Bildisco, supra,* at 81;

█ 5. That in order to establish that the contracts are burdensome to the estate, it is not necessary for the debtor in possession to show that reorganization would fail absent rejection. *In re Bildisco, supra;*

█ 6. That Commercial Motor Freight has sustained its burden of proving that the labor contracts at issue herein are burdensome to the estate, it appearing to the court that under present economic conditions continued operation under the terms of the contracts is likely to result in Commercial Motor Freight sustaining further operating losses;

7. That although the court is not persuaded that retention of the labor contracts will result in Commercial Motor Freight's immediate demise, the facts adduced give rise to a high probability that in order to continue operating under the labor contracts, Commercial Motor Freight will be forced to effect further liquidation of assets and further layoffs of employees, and there is a significant possibility that Commercial Motor Freight will ultimately collapse;

8. That although factors other than the labor contracts have contributed to Commercial Motor Freight's financial decline, the court is not of the opinion that the contracts must be shown to be the exclusive or primary cause thereof in order to be found burdensome to the estate, it being sufficient that the labor contracts constitute a significant factor in Commercial Motor Freight's financial condition;

9. That the labor contracts are burdensome to the estate within the meaning of *In re Bildisco, supra,* and the court now proceeds to weigh the competing equities;

10. That bad faith on the part of the employer is a matter to be considered in balancing the equities;

11. That the court does not find bad faith in Commercial Motor Freight's conduct during the 1982 contract negotiations, its dealings with employees concerning wage deferral programs, cutbacks in hours, and other alleviatory measures, or its failure to attempt to bargain with the Union following the decision to initiate reorganization proceedings;

13. That while the action of Commercial Motor Freight's directors in awarding themselves significant salary increases and other benefits was highly improvident under the circumstances, the court is not of the opinion that such action evinces bad faith; and that, further, the monetary amount involved is de minimus as compared to the total labor costs required by the contracts;

14. That rejection of the contracts will adversely affect valuable pension rights of all affected employees, and particularly those several employees shown to have been laid off shortly before their anticipated retirement dates;

15. That whether or not the court approves rejection of the labor contracts, Commercial Motor Freight, as debtor in possession, remains an employer subject to the duties and responsibilities imposed by the *National Labor Relations Act*, 29 U.S.C. §§ 151 et seq. (hereinafter NLRA), includ-

ing the duty to bargain with the certified representatives of its employees. *In re Shippers Interstate Services, Inc.,* (7th Cir. 1980) 618 F.2d 9; *Local Union No. 455 v. Kevin Steel Products, Inc.,* (2d Cir.1975) 519 F.2d 698;

16. That concomitantly, the employees retain their rights under the NLRA, including the right to strike;

17. That while the court is concerned that a strike would be detrimental to the attempted reorganization, the court has been given no indication that a legal strike is imminent upon approval of rejection of the labor contracts, or that the required negotiations between the parties will result in a strike;

18. That under § 365(g) of the Bankruptcy Code, the rejection of an executory contract gives rise to an action for damages by those parties adversely affected by such rejection;

19. That any damages awards occasioned by the rejection of the labor contracts will constitute claims in the Chapter 11 reorganization proceedings now before the court, and will be considered accordingly; and

20. That it is the considered opinion of the court that rejection of the labor contracts will assist Commercial Motor Freight in its reorganization attempt; that through future negotiations, as required by the NLRA, the parties may well adopt labor contracts that are mutually satisfactory in light of current economic and industry conditions; that more jobs are likely to be preserved by rejection of the present labor contracts than by their retention; and that the potential for successful reorganization and the preservation of jobs outweighs the losses sustained by virtue of the rejection.

It is, therefore, ORDERED, ADJUDGED AND DECREED, that the Application for Approval of Notice of Rejection of Executory Contracts should be and is hereby sustained.