
In re ARROW AIR, INC., Debtor.

ARROW AIR, INC., Plaintiff,

v.

UNITED AIRLINES, INC., Defendant.

Bankruptcy No. 86–00340–BKC–AJC.
Adv. No. 86–0533–BKC–AJC–A.

United States Bankruptcy Court,
S.D. Florida.

Jan. 13, 1987.

Valerie A. Jahn, Weil, Gotshal & Manges, Miami, Fla., for Arrow Air, Inc.

S. Michael Levin, McDermott, Will & Emery, Miami, Fla., for United Airlines, Inc.

## MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT

A. JAY CRISTOL, Bankruptcy Judge.

On August 13, 1986, Plaintiff, Arrow Air ("Arrow"), filed its two count Complaint against Defendant, United Airlines ("United"). Plaintiff's Amended Complaint was filed August 26, 1986. Count I sought the refund of overpayments made by Arrow to United for which no services were provided under the parties' Ground Services Agreement No. 49789. Count II sought injunctive relief against United's actions in violation of 11 U.S.C. § 362(a)(6) and (a)(7). Arrow also filed an Emergency Motion for Temporary Restraining Order which was granted ex parte. The Court nevertheless required a hearing be held within seven days. At the hearing held August 20, 1986, this Court converted the Temporary Restraining Order to a Temporary Injunction pending the final resolution of this matter.

On October 29, 1986, the parties submitted their Pretrial Stipulation of Undisputed Facts and Issues of Law. There being no remaining issues of fact, no trial was set in this matter. Instead, the parties submitted Motions for Summary Judgment, on which hearings were held on December 16, 1986.

### I. The Undisputed Facts

1. United and Arrow at various times in 1982 and thereafter, entered into several ground services agreements at airports in New York, Philadelphia, and Orlando pursuant to which United provided services and materials to Arrow.

2. Pursuant to the terms of these several agreements, a letter of credit was initial-

ly issued by Standard Chartered Bank, PLC in the amount of $120,000 with United as the beneficiary to secure the payment of Arrow's obligations under the several agreements. The term of this letter of credit was extended and the amount eventually decreased to $50,000. The letter of credit expires on January 17, 1987.

3. One of these agreements, Ground Service Agreement No. 49789 at JFK International Airport, as amended by the parties, also provided for payment by Arrow of a monthly minimum charge of $155,000 *if* the value of services actually rendered by United to Arrow did not exceed that amount. However, the Agreement does not provide that this amount becomes due on the first day of each month and previous invoices did not bill this amount on a prospective basis, but rather at month's end.

4. United furnished services and materials to Arrow pursuant to the agreement on at least two occasions as late as February, 1986, but no services were provided after February 11, 1986, the date on which Arrow's Chapter 11 case was commenced.

5. On February 11, 1986, Arrow filed a Petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida.

6. On February 11, 1986, Arrow suspended its entire passenger operation on a system-wide basis. As a result, no services were provided by United to Arrow after February 11, 1986.

7. After the filing of Arrow's Chapter 11 Petition, and without leave of this Court, United improperly invoiced Arrow for services which had been provided pre-petition. These invoices were dated February 13, 1986, February 26, 1986, March 10, 1986, March 12, 1986, March 13, 1986, and April 18, 1986.

8. On April 15, 1986, upon Arrow's motion, this Court entered an Order Approving Rejection of the parties' Ground Services Agreement No. 49789.

9. On or about July 16, 1986, United notified Arrow of its intent to draw against the $50,000 letter of credit for allegedly outstanding invoices totalling $30,576.23. This was again accomplished without leave of court and in violation of 11 U.S.C. § 362(a).

10. On August 13, 1986, Arrow filed this adversary proceeding to enjoin United's wrongful attempt to draw down the letter of credit.

11. United has presented invoices for pre-petition services and charges pursuant to the several agreements totalling $206,865.08.

12. These invoices included the amount of $121,695.85, the amount allegedly necessary to reach the monthly minimum charge for services at JFK International Airport in February, 1986, pursuant to the agreement covering that airport.

13. Arrow had made prepayments pursuant to the agreement and is entitled to a credit in the amount of $175,468.85. Arrow is entitled to an additional credit of $820.00 as an unapplied cash credit.

14. The amount to which United claims it is entitled to under the letter of credit and in accordance with the Agreement is derived from the invoices of $206,865.08, less Arrow's prepayment of $175,468.85 and Arrow's credit of $820.00 for a total of $30,576.23.

15. Arrow is further entitled to an interline credit in the amount of $22,870.68, and to a credit of $372.46 representing a credit from Arrow's Denver account.

16. United is also entitled to $81,729.24 representing payments due for ATP cards issued by United.

17. Additionally, United is entitled to $418.10 representing an offset of Apollo debits and credits.

18. Offsetting these debits and credits, and granting United its pro rata share of the monthly minimum charge for eleven days of service in February, $60,892.86, rather then the entire monthly minimum balance of $121,695.85, the net result is that Arrow has a net credit of $4,625.70.

19. At no time, even to this date, did United obtain a modification of the auto-

matic stay of 11 U.S.C. § 362(a) prior to sending its notice to Arrow that there would be a drawdown on the letter of credit, nor prior to the sending of the six post-petition invoices for pre-petition services.

## II. *Conclusions of Law*

1. This Court has jurisdiction to enjoin United's actions in violation of the automatic stay, including any actions effectuating the drawing down of the $50,000 letter of credit.

■ 2. With respect to United's claim that it is entitled to the entire monthly minimum charge, the Court does not agree. The contract does not specify that the entire monthly minimum accrues on the first day of each month. Moreover, this appears not to be the case since the minimum charges were not billed at the beginning of each month on a prospective basis but rather retroactively at month's end. Moreover, the affidavit of United's representative, Ron Hanson, is undisputed in its description of the monthly minimum as being calculated at the end of each month.

3. In support of its argument that United is entitled to the full monthly minimum charge, United has proffered two decisions; both of which are distinguishable from the instant case and therefore do not persuade the Court to agree with United's position. The first case, *In re Community Medical Center*, 623 F.2d 864 (3d Cir.1980), is inapplicable to the instant case because its holding it based on the application of New Jersey law. Moreover, the case involves a Chapter XI proceeding under the now repealed 1898 Bankruptcy Act and is therefore not authoritative in an action arising under the Bankruptcy Code.

4. The second decision to which United points for support, *In re California Steel Co.*, 24 B.R. 185, 10 B.C.D. 512 (Bankr.N.D. Ill.1982) is also not authoritative in the present factual situation. The decision dealt with the debtor's ability to avoid a claim for monthly minimum charges absent a proper rejection of the executory contract. The debtor had to decide to accept all of the burdens and services such a contract carried, or to stop all services un-

der the contract at the date of the petition. In *California Steel, supra*, the acceptances of post-petition services resulted in debtor's liability for the corresponding minimum charges.

5. In the instant case, it is undisputed that no services were provided by United to Arrow after the February 11, 1986 filing date. Therefore, United cannot recover the monthly minimum charge for the entire month of February. However, United is entitled to its pro rata share of the $155,-000 monthly minimum for the eleven (11) days of service which were made available to Arrow. Therefore, United is entitled to recover monthly minimum charges of $60,-892.86.

6. Under the parties' agreement, only certain charges would be credited against the monthly minimum. During February 1 through February 11, 1986, Arrow accumulated charges of $33,304.15 which are properly credited against the pro rated monthly minimum of $60,892.86 resulting in an additional credit to Arrow. There remains the amount of $27,588.71, which is a credit to United. Therefore, in light of all the credits due United, Arrow is entitled to a judgment in its favor of $4,625.70.

7. This executory contract was properly rejected by Arrow and under controlling bankruptcy law, the rejection is deemed to be a breach of the contract occurring immediately before the filing of the petition. 11 U.S.C. § 502(g); *International Brotherhood of Teamsters, et al. v. IML Freight, Inc.*, 789 F.2d 1460 (10th Cir.1986); *In re Steiner*, 50 B.R. 181 (Bankr.N.D. Ohio 1985); *In re Cardinal Export Corp.*, 30 B.R. 682 (Bankr.E.D.N.Y.1983); *In re Commercial Freight Inc. of Indiana*, 27 B.R. 293 (Bankr.S.D.Ind.1983). Additionally, United has not pled nor proven any actual damages suffered as a result of Arrow's breach. No such allegation appears as a defense (setoff) or as a counterclaim of any kind. The burden of such proof is on United, and therefore it is not entitled to the full $121,695.85 amount for which no services were provided to Arrow

pre- or post-petition, but may only recover $60,892.86. *In re Peninsula Gunite, Inc.*, 24 B.R. 593 (Bankr. 9th Cir.1982); *In re Standard Furniture Co.*, 3 B.R. 527 (Bankr.S.D.Cal.1980).

8. United's post-petition actions to collect its claim against Arrow were all performed without leave of court and may be in violation of the automatic stay of 11 U.S.C. § 362(a) and may therefore be void and of no effect. United failed to respond to this argument and the cases cited by Arrow are persuasive on this issue. *In re Fasgo, Inc.*, 58 B.R. 99 (Bankr.E.D.Pa. 1986); *In re Van Riper*, 25 B.R. 972 (Bankr.W.D.Wis.1982); *In re Hill*, 19 B.R. 375 (Bankr.N.D.Tex.1982).

9. United has attempted to stress to the Court its inability to affect the relationship between United and Standard Chartered Bank, PLC. This is not disputed by Arrow. However, the actions by United were violative of 11 U.S.C. § 362(a)(6) and (a)(7), and so were of such a nature as to be properly enjoined by this Court under its powers pursuant to 11 U.S.C. § 105(a).

10. The Court concludes that there is no genuine issue of material fact remaining to be decided by this Court, and that Arrow is entitled to a judgment in its favor as a matter of law. The Court will enter a separate judgment for damages in the amount of $4,625.70, and enjoining United from taking any action to collect the debts which were the subject of this action from Plaintiff, Arrow, including any agent, representative, or employee thereof and further enjoining any action to draw under the letter of credit issued by Standard Chartered Bank, PLC.