In re James M. GOODMAN, Debtor.

James M. GOODMAN and Goodman Automatic Sprinkler Corp., Plaintiffs,

v.

NATIONAL LABOR RELATIONS BOARD and Road Sprinkler Fitters Local 669, A Constituent of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Defendants.

Bankruptcy Nos. 84–21376, 87–2057A.

United States Bankruptcy Court, W.D. New York.

Jan. 25, 1988.

Douglas Lustig, Rochester, N.Y., and Weil, Gotshal & Manges by Bruce Zirinsky, New York City, for James Goodman and Goodman Automatic Sprinkler Corp.

Harter, Secrest & Emery by Jack D. Eisenberg, Rochester, N.Y., for Goodman Automatic Sprinkler Corp.

Diane Rosse, Washington, D.C., for N.L.R.B.

Chamberlain, D'Amanda, Oppenheimer & Greenfield by Michael T. Harren, Rochester, N.Y., and Beins, Axelrod & Osborne by Paul A. Green, William Osborne, Washington, D.C., for Road Sprinkler Fitters, Local 669.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

This Adversary Proceeding was commenced by James M. Goodman (the "Debtor") and the Goodman Automatic Sprinkler Corporation ("GASC") on July 20, 1987. The Debtor filed a petition in bankruptcy under Chapter 7 on December 6, 1984, and was ordered discharged on March 26, 1985. The complaint alleges that the National Labor Relations Board ("NLRB") and the Road Sprinkler Fitters Local 669 (the "Union") have engaged in conduct which violates this Court's Discharge Order. The Debtor and GASC seek 1) a declaration that claims now being pressed against them by the NLRB and the Union were discharged in bankruptcy; 2) a declaration that the NLRB and the Union by their acts have violated the Discharge Order; 3) an Order permanently enjoining the NLRB and the Union from commencing or continuing actions or proceedings to enforce obligations predating the bankruptcy filing; and 4) a determination that the acts of the NLRB and the Union were in knowing and willful disregard of the Discharge Order, warranting a contempt citation and the imposition of damages, costs and fees.

The Union did not put in an answer, but on August 3, 1987, moved to dismiss the complaint. On August 21, 1987, the NLRB put in an answer and moved for summary judgment. On October 1, 1987, the Debtor and GASC crossmoved for summary judgment and filed a memorandum in opposition to the motion for dismissal. The Motions were consolidated and heard on October 5, 1987. Supplemental memoranda have since been submitted. The parties are in agreement that there is no genuine issue as to any material fact. Accordingly, the case is ripe for summary adjudication. Bkrtcy. Rule 7056; F.R.C.P. 56.

The E.G. Sprinkler Corporation ("EGSC") was formed by the Debtor and another party in 1973. In 1979, the Debtor became sole shareholder of EGSC. In April of 1979, EGSC entered into a collective bargaining agreement (the "Agreement") with the Union which, by terms, was scheduled to expire on March 31, 1982. In early 1981, EGSC experienced financial difficulty and on December 31, 1981, the company ceased doing business. On May 26, 1981, prior to the cessation of business by EGSC, Goodman Piping Products Incorporated ("GPPI") was formed. GPPI's sole shareholder, director and officer was the Debtor's spouse, Victoria Goodman. GPPI did not adhere to the Agreement by which EGSC was bound, prompting the Union to file unfair labor practice charges. The charges alleged that GPPI, as alter ego of EGSC, should be held to the terms of the Agreement. Based on the Union's charges, the NLRB issued a complaint against EGSC and GPPI alleging them to be in violation of the National Labor Relations Act.

On the basis of the NLRB charges, EGSC and GPPI were determined by an administrative law judge to have committed unfair labor practices by breaching obligations that arose under the Agreement. In a decision by a review panel of the NLRB, *E.G. Sprinkler Corp.*, 268 NLRB 1241 (1984), the administrative law judge's findings were upheld. The review panel's decision was enforced by the Court of Appeals for the Second Circuit. *Goodman Piping Products Inc. v. NLRB*, 741 F.2d 10 (2nd Cir.1984).[1]

On December 6, 1984, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code. The NLRB was listed in the case as an unsecured creditor holding a disputed claim for employee wages and benefits. On March 15, 1985, the bankruptcy trustee filed a report in the case disclosing that there were no assets for distribution to unsecured creditors. The Debtor received a Chapter 7 discharge on March 26, 1985. The case was closed on May 1, 1985.

On April 17, 1985, EGSC and GPPI both filed in bankruptcy under Chapter 7. The NLRB was listed as an unsecured creditor holding a disputed claim for employee wages and benefits in each case. On June 5, 1985, the bankruptcy trustee filed a report disclosing no assets in either case. Both cases were closed on August 16, 1985. Neither EGSC nor GPPI received a discharge because, as corporations, they were not entitled to one in Chapter 7. 11 U.S.C. § 727(a)(1).[2]

In June of 1985, prior to the close of the EGSC and GPPI bankruptcies, the Debtor formed GASC, a corporation of which he is sole shareholder. GASC commenced operations in September of 1985. On November 21, 1986, a complaint issued from the NLRB, again on charges filed by the Union, alleging the Debtor and GASC, as alter egos of EGSC and GPPI, to have committed unfair labor practices by failing to comply with the 1984 NLRB order.[3] On August 17, 1987, the complaint was amended to exclude the Debtor from all causes by which liability was sought to be imposed in connection with monetary obligations arising prior to the Debtor's bankruptcy filing. The NLRB and the Union cede that the Debtor's personal liability on monetary obligations was discharged in bankruptcy.

---

1. A supplemental decision was issued by the NLRB on July 3, 1985, which assessed backpay and trust fund obligations found owing by EGSC and GPPI. That decision was upheld by an Order of the Court of Appeals issued April 17, 1987, granting the NLRB's application for summary enforcement of the obligations.

2. The statute states,
   (a) The Court shall grant the debtor a discharge, unless—
   (1) the debtor is not an individual;
   ....
   11 U.S.C. § 727(a)(1)

3. The NLRB Order consisted of two decretal paragraphs. The first paragraph principally required EGSC and GPPI to cease refusing recognition of the Union and the Agreement. The second paragraph principally required EGSC and GPPI to honor the Agreement and make whole the Union and employees by collectively bargaining and bringing current wage arrears and benefit contributions. EGSC and GPPI were also directed to provide the NLRB with various records through use of which the back pay and benefit contribution obligations were to be calculated.

Ironically, the NLRB and the Union theorize that, as principal of GASC, the Debtor may be found personally liable for monetary obligations which predate his bankruptcy to the extent that the obligations can be traced to him through EGSC, GPPI and GASC. The NLRB also seeks to hold the Debtor liable for the non-monetary obligations that arose under the Agreement, as well as for monetary and non-monetary obligations which antedate his bankruptcy filing. Finally, through alter ego theory, the NLRB seeks to impose liability on GASC for the monetary and non-monetary obligations from which EGSC and GPPI have not been discharged. *See* note 2, *supra,* and accompanying text. The Debtor and GASC responded to the NLRB enforcement initiative by commencing this adversary proceeding.

■■■ The Court has jurisdiction to enforce its discharge orders. 28 U.S.C. § 157; 11 U.S.C. § 524. Accordingly, the Debtor is a proper party plaintiff. A jurisdictional problem is perceived, however, with respect to GASC. The NLRB argues that the Court is without jurisdiction to adjudicate causes asserted by GASC because the latter is not, and has not been, a debtor in a case before this Court. 28 U.S.C. § 157(a); 11 U.S.C. § 101(12); 11 U.S.C. § 301.

GASC cites the Court to two cases which purportedly buttress its assertion of jurisdiction. *Local Loan Company v. Hunt,* 292 U.S. 234, 239, 54 S.Ct. 695, 696, 78 L.Ed. 1230, 1232 (1934); *Matter of Warren,* 7 B.R. 201, 204–05 (Bankr.N.D.Ala.1980). In both *Hunt* and *Warren, discharged debtors* brought actions to restrain creditors from enforcing discharged obligations against third parties who were alleged to be liable on the obligations. Because enforcement of those obligations against the third parties was thought likely to impair the debtors' fresh starts, the creditors in both cases were ordered to desist. Those cases, however, differ from the case at bar.

Unlike *Hunt* and *Warren,* the causes here being contested have been brought by a stranger to the Court rather than a *discharged debtor.* No case or statute is cited, nor have any been found, which support GASC's invocation of jurisdiction as a non-debtor. Accordingly, the complaint is dismissed insofar as it states causes of action in behalf of GASC directly. As will be explained, however, while GASC is down, it is not out.

The teaching of *Local Loan Company v. Hunt, supra,* is that where the scope of a debtor's discharge is implicated, the jurisdiction of the bankruptcy court is broad. *Hunt,* 292 U.S. 234, 239, 54 S.Ct. 695, 696, 78 L.Ed. 1230, 1232. In this case, the scope of the Debtor's discharge is implicated because the NLRB and the Union are seeking to enforce against the Debtor obligations which, arguably, were discharged. In response to the enforcement initiative, the Debtor commenced this proceeding to test the measure of his discharge. By challenging the NLRB and the Union for seeking to enforce claims that were allegedly discharged, and by seeking to enjoin any further attempt at enforcement, the Debtor states causes of action upon which relief can be granted. Accordingly, the Motion to dismiss is denied insofar as the complaint seeks relief in behalf of the Debtor directly. Further, although non-debtors are unable to invoke the jurisdiction of bankruptcy courts directly, the rights of such non-debtors may be successfully adjudicated in proceedings commenced by discharged debtors. *Local Loan Company v. Hunt, supra; Matter of Warren, supra.* Thus, while GASC cannot invoke the Court's jurisdiction, its claims may be adjudicated derivatively through the Debtor's lawsuit.

■■■ The NLRB and the Union first theorize that the Debtor's discharge relieved him only of the monetary obligations that arose under the Agreement. By contrast, non-monetary obligations, such as the requirements of recognizing and collectively bargaining with the Union, were not discharged. Accordingly, it is urged by the NLRB that the Debtor should be made to honor and implement the non-monetary obligations of the Agreement. The NLRB further reasons that if GASC be proven the alter ego of EGSC and GPPI, then the

non-monetary obligations of the Agreement can be enforced against it as well.

For purposes of resolving this issue, the Court need decide whether an obligation to collectively bargain is discharged in bankruptcy.[4] The Agreement under which the bargaining obligation arose had as its expiration date March 31, 1982. It is incomprehensible that four years later the NLRB and the Union would seek to enforce the Agreement against the Debtor, who had received a bankruptcy discharge, and GASC, which did not even exist during the term of the Agreement. "They [the NLRB and the Union] assume, without any apparent basis in law, that the [Agreement] will continue in perpetuity." Debtor's Memorandum of Law at 20. Even assuming that the bargaining provisions of the then lapsed Agreement survived to be imposed against the Debtor by Order of the NLRB in 1984, those obligations were effectively extinguished in the subsequent bankruptcy.

▪ Under 11 U.S.C. § 365(d)(1),[5] if a Chapter 7 trustee does not assume an executory contract of a debtor within sixty days after a voluntary case is commenced, such contract is deemed rejected. Collective bargaining agreements are executory contracts within the meaning of the statute. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 516, 104 S.Ct. 1188, 1191, 79 L.Ed.2d 482, 489 (1984). "[T]he effect of a rejection is that a breach is deemed to exist[6] which in the ordinary case will give rise to a claim for damages." 2 Collier on Bankruptcy, ¶ 365.08 (15th Ed.1987).

Here, the Trustee for the Debtor declined to assume the Agreement.[7] Accordingly, the Agreement was deemed rejected. The rejection created in the NLRB a right to submit a claim in the Debtor's bankruptcy and the NLRB submitted such a claim. The claim submitted represented wage and benefit arrears for which the Debtor had been found liable by the 1984 NLRB order. Apparently, no portion of the claim submitted represented loss occasioned by the Debtor's failure to submit to collective bargaining. The NLRB argues that the portion of the 1984 Order directing the resumption of collective bargaining is in the nature of an equitable remedy not giving rise to a right to payment. As such it is not a "claim"[8] within the meaning of bankruptcy law. The NLRB advocates too narrow a view of the "claim" concept.

---

4. A sizable body of caselaw cited by the NLRB makes clear that the duty to bargain does not vanish upon the advent of a bankruptcy proceeding.

    *Local Joint Executive Board v. Hotel Circle, Inc.*, 613 F.2d 210, 215 (9th Cir.1980) (duty to bargain continues); *Shopmen's Local No. 455 v. Kevin Steel Products, Inc.*, 519 F.2d 698, 704 (2nd Cir.1975) ("obligation to comply with the Labor Act [continues]"); *NLRB v. Bachelder*, 120 F.2d 574, 576 (7th Cir.1941) (duty to bargain and honor employees' rights to self-organization).

    Those cases are distinguishable from the case at bar, however, because in each of them a collective bargaining agreement was in effect at the commencement of the bankruptcy case. Here, the Agreement, by terms, had expired nearly three years prior to the bankruptcy filings.

5. The statute states fully that,

    In a case under chapter 7 of this title if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such contract or lease is deemed rejected.

6. Section 365(g)(1) of the Code states that,

    Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—(1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition....
    11 U.S.C. § 365(g)(1)

7. It is difficult to imagine the Trustee assuming or rejecting the Agreement since, by terms, it had expired several years prior to the Trustee's appointment.

8. Section 101(4)(B) of the code states that, "claim" means—

    . . . . .
    right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.
    11 U.S.C. § 101(4)(B)

11 U.S.C. § 365(d)(1)

"[I]n the case where a breach would be remedied by a decree of specific performance because damages are too difficult to ascertain, the right to specific performance should normally constitute a claim under [11 U.S.C. § 101(4)(B) ]." Matthews, *The Scope of Claims Under the Bankruptcy Code* (second installment), 57 Am.Bankr.L. J. 339, 342 (1983). That the amount of damages flowing from a breach that gives rise to an equitable remedy is not readily calculable should not defeat treating such an obligation as a claim in bankruptcy. Section 502(c)(2) [9] of the Bankruptcy Code makes specific provision for the treatment of claims which resist precise calculation. The legislative history states,

> Subsection (c) requires the estimation of any claim liquidation of which would unduly delay the closing of the estate, such as a contingent claim, *or any claim for which applicable law provides only an equitable remedy, such as specific performance. This subsection requires that all claims against the debtor be converted into dollar amounts.* (emphasis added). (H.Rep. No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) p. 354, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6310.).

Thus, if the NLRB felt itself entitled to remuneration for the Debtor's refusal to resume bargaining, it should have included in its claim an amount attributable thereto.[10] As the Supreme Court stated,

> "Claims arising after filing, such as result from the rejection of an executory contract, must [ ] be presented through the normal administrative process by which claims are estimated and classified. Thus, suit may not be brought against the debtor-in-possession under the collective bargaining agreement; recovery may be had only through adminis-

tration of the claim in bankruptcy. (citations omitted).

*NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 530, 104 S.Ct. 1188, 1198, 79 L.Ed.2d 482, 498 (1984).

■ Here, the NLRB is seeking to enforce a bargaining obligation against the Debtor. The bargaining obligation was breached when the trustee failed to assume the Agreement. The breach created in the NLRB the right to submit a claim reduced to a monetary amount. The NLRB submitted a claim which was administered through the bankruptcy proceeding. The NLRB chose not to include in its claim any amount attributable to the Debtor's failure to resume bargaining. The NLRB claim, as submitted, was allowed. The debt represented by the claim was discharged. Ancillary obligations omitted from the claim cannot now be pressed against the Debtor. Accordingly, the Court instructs the NLRB and the Union to cease their effort at enforcing the bargaining provisions of the Agreement against the Debtor. Enforcement of those provisions against GASC should be halted as well. GASC is the Debtor's livelihood and the manifestation of his fresh start in bankruptcy. To permit the discharged bargaining obligations to be enforced against GASC would sully that fresh start and subvert the policy of the Bankruptcy Code. *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230, 1235 (1934); *In re Spell*, 650 F.2d 375, 379 (2nd Cir.1981) *quoting Local Loan Co., supra.*

■ The NLRB next asserts that the Debtor's discharge does not insulate GASC from monetary obligations for which it may be found liable as alter ego of EGSC and GPPI. Taking this reasoning a step further, the NLRB suggests that the discharge cannot even insulate the Debtor

---

9. Section 502(c)(2) states that,

There shall be estimated for purpose of allowance under this section—

. . . . .

any right to payment arising from a right to an equitable remedy for breach of performance. 11 U.S.C. § 502(c)(2)

10. "Section 502(c) provides that any contingent or unliquidated claim shall be estimated for purposes of settling a bankruptcy estate. Under this provision losses occasioned by the rejection of a collective-bargaining agreement must be estimated, ..."

*NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 530 n. 12, 104 S.Ct. 1188, 1198 n. 12, 79 L.Ed.2d 482, 498 n. 17b (1984).

from these obligations if, as principal of GASC, he is found derivatively liable. The NLRB cites cases [11] which stand for the proposition that a bankruptcy discharge does not effect the liabilities of a co-debtor on discharged obligations. The issue of co-debtor liability in each of those cases was decided by application of 11 U.S.C. § 524(e).[12] Against this basic rule of co-debtor liability, however, there must be weighed the importance of preserving the integrity of a discharged debtor's fresh start. That consideration is given expression by 11 U.S.C. § 524(a).[13]

Section 524(a) puts teeth into a discharge order by prohibiting pre-petition creditors from satisfying discharged obligations against debtors personally, 11 U.S.C. § 524(a)(1), (2), or by resort to "property acquired by the debtor after the commencement of the bankruptcy case." 3 Collier on Bankruptcy ¶ 524.01[1] (15th Ed.1987). Here, the NLRB and the Union are seeking to enforce pre-petition obligations against both the Debtor and his after acquired property. They would accomplish this by enforcing against GASC the monetary obligations of EGSC and GPPI that survived discharge, *see* note 2 *supra*, and by enforcing against the Debtor the obligations of GASC. This strategy will not prevail. The Court will not permit by indirection that

which is prohibited from happening directly.

Mindful that section 524(e) precludes application of a bankruptcy discharge to shield a non-debtor from liability, the Court cannot ignore the fact that a successful enforcement effort against GASC will severely dampen the scope and effect of the Debtor's discharge. In a principal case relied on by the NLRB, *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934 (6th Cir.1986), a non-debtor entity was held liable on discharged obligations chiefly because it had succeeded to the pre-bankruptcy assets and interests of the debtor. *Cooper*, 804 F.2d 934, 943 n. 8. Here, GASC has succeeded to none of the assets, employees or business opportunities of EGSC and GPPI. GASC is distinct from the latter two and constitutes a post-petition acquisition of the Debtor. Accordingly, it would be unfair to enforce the obligations of EGSC and GPPI against GASC in the guise of alter ego liability when to do so would achieve the primary result of satisfying pre-petition indebtedness out of post-petition property. Enforcement of these pre-petition obligations against the Debtor, in his capacity as principal of GASC, is prohibited as well. Such subterfuge would emasculate the bankruptcy discharge, a result against which Congress has spoken in section 524(a) of the Bankruptcy Code.[14] Ac-

---

**11.** *Underhill v. Royal,* 769 F.2d 1426, 1432 (9th Cir.1985); *In re Sago Palms Joint Venture,* 39 B.R. 9, 10 (Bankr.S.D.Fla.1984); *In re Inforex,* 26 B.R. 515, 518 (Bankr.D.Mass.1983); *NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 943–44 (6th Cir.1986).

**12.** The statute reads,

Effect of discharge

. . . . .

(e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

11 U.S.C. § 524(e)

**13.** The statute states in pertinent part that,

(a) A discharge in a case under this title

. . . . .

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect,

recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived....

11 U.S.C. § 524(a)(2)

**14.** A relevant excerpt from the legislative history of section 524 states,

Subsection (a) specifies that a discharge in a bankruptcy case voids any judgment to the extent that it is a determination of the personal liability of the debtor with respect to a prepetition debt, and *operates as an injunction against the commencement or continuation of an action, the employment of process, or any act,* including telephone calls, letters, and personal contacts, *to collect, recover, or offset any discharged debt as a personal liability of the debtor, or from property of the debtor,* ... The injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts. (emphasis added). H.Rep. No. 95–595, 95th Cong., 1st Sess. (1977) p. 365, U.S.Code Cong. & Admin.News 1978, p. 6321.

cordingly, the NLRB and the Union are directed to desist from their effort to enforce against GASC and the Debtor obligations rooted in the pre-bankruptcy era, *i.e.,* prior to December 24, 1984.

The latter directive should put to rest the final thrust of the NLRB's argument. The NLRB and the Union posit correctly that a discharge cannot shield the Debtor or GASC from liability for acts occurring subsequent to the date of the bankruptcy filing. 11 U.S.C. § 727(b). Accordingly, the NLRB and the Union are free to utilize whatever legal means they have available to insure compliance with applicable labor law standards in the post-bankruptcy era. As discussed above, however, obligations having their genesis prior to December 24, 1984, are no longer fair game.

The remaining issues in this case concern the steps which should be taken to redress the Debtor and defuse the enforcement initiative. The Debtor requests that an enjoining order issue, and a finding of contempt be made.

■ In general, bankruptcy courts are empowered to issue injunctive orders. 11 U.S.C. § 105; *In re Johns Manville Corp.,* 801 F.2d 60 (2nd Cir.1986). However, administrative proceedings should only be enjoined when they pose a threat to bankruptcy estate assets. *In re Rath Packing Co.,* 38 B.R. 552 (Bankr.N.D.Iowa 1984); *In re Commercial Motor Freight, Inc.,* 27 B.R. 293 (Bankr.S.D.Ind.1983); *In re D.M. Barber Inc.,* 13 B.R. 962 (Bankr.N.D.Tex.1981). Here, there is no bankruptcy estate whose assets are threatened and require protection. Thus, the predicate to an award of injunctive relief is lacking, and an enjoining order will not issue. *In re Brada Miller Freight Systems Inc.,* 16 B.R. 1002, 1013 (N.D.Ala.1981), *rev'd on other grounds, Matter of Brada Miller Freight Systems, Inc.,* 702 F.2d 890 (11th Cir.1983).

The Debtor next asks that the NLRB and the Union be found in contempt of the Discharge Order and that appropriate sanctions be imposed. Nowhere in the Bankruptcy Code is the Court given civil contempt power. It has been widely held, however, that bankruptcy courts are pos-

sessed with inherent contempt powers to enforce compliance with their orders. *In re McLean Industries, Inc.,* 68 B.R. 690, 695 (Bankr.S.D.N.Y.1986), *citing, Better Homes of Virginia, Inc. v. Budget Service Company,* 52 B.R. 426, 428–30 (E.D.Va. 1985), *aff'd,* 804 F.2d 289 (4th Cir.1986); *In re Crum,* 55 B.R. 455, 457–59 (Bankr.M.D. Fla.1985); *In re L.H. & A. Realty,* 62 B.R. 910, 918 (Bankr.D.Vt.1986); *In re Elegant Concepts, Ltd.,* 67 B.R. 914, 918 (Bankr.E. D.N.Y.1986). This Court has previously been upheld by the District Court when challenged for issuing a contempt citation. *In re Pyramid Restaurant Equipment Co., Inc.,* 24 B.R. 455 (Bankr.W.D.N.Y. 1982), *aff'd, In re Pyramid Restaurant Equipment Co., Inc.,* (W.D.N.Y. March 21, 1983). Accordingly, the merits of the contempt issue will be decided.

■ A contempt citation is appropriate where the terms of the order allegedly violated are specific. *Intern. Distrib. Centers v. Walsh Trucking Co.,* 62 B.R. 723, 730 (S.D.N.Y.1986), *citing, Folsom v. Blum,* 554 F.Supp. 828, 830 (S.D.N.Y.1982). Here, the order said to have been violated was the Debtor's Discharge Order (Appendix A). The Discharge Order is, by its very nature, general in terms. It does not specify the particular obligations subject of its mandate. Instead, it summarily directs that the Debtor "is released from all dischargeable debts," and enjoins creditors from taking action to collect on such debts.

■ With hindsight it is clear that the NLRB and the Union have acted to collect on discharged debts and in so doing violated the Discharge Order. However, from the perspective available at the time the enforcement proceedings were initiated in November of 1986, it was anything but clear that the obligations subject of the instant controversy were discharged. The diligence and mastery with which the NLRB and the Union have espoused complicated and intriguing legal arguments bely the assertion that theirs was "a transparent attempt to circumvent [the Debtor's] discharge." Debtor's Memorandum of Law at 5. Accordingly, no remedial award will be made to the Debtor.

██ While no remedial contempt sanction will be imposed in this case, a coercive contempt sanction, aimed at securing future compliance with the Court's orders, is appropriate. *In re Irving*, 600 F.2d 1027, 1037 (2nd Cir.1979), *cert. denied*, 444 U.S. 866, 100 S.Ct. 137, 62 L.Ed.2d 89 (1979). The sanction will be structured in a manner to reward compliance and punish defiance. As discussed more fully above, the Court has concluded, and will order, that the Debtor's discharge precludes the assertion against him or GASC of claims rooted in the pre-bankruptcy era. Accordingly, any future attempt at enforcing those claims will be viewed as violative of a clear judicial directive, punishable as contempt by a per diem fine of $500 for each day enforcement activities continue.

To summarize, the Discharge Order extinguished the "non-monetary" obligations embodied in the Agreement, rendering them unenforceable against the Debtor and GASC. The Discharge Order also shields the Debtor and GASC against any monetary liabilities which survived the bankruptcies of EGSC and GPPI. Any attempt to enforce said obligations and liabilities against the Debtor or GASC from this day forward shall be punishable as contempt and it is so ordered.

APPENDIX A

IN RE:

JAMES M. GOODMAN

325 Fairport Road

E. Rochester, N.Y. 14445

Debtor(s)

CASE NO. 84–21376
UNITED STATES
BANKRUPTCY COURT

WESTERN DISTRICT OF NEW YORK

DISCHARGE OF DEBTOR

It appearing that the person named above has filed a petition commencing a case under title 11, United States Code, and an order for relief was entered under chapter 7 and that no complaint objecting to the discharge of the debtor was filed within the time fixed by the court, it is ordered that:

1. The above named debtor is released from all dischargeable debts.

2. Any judgment heretofore or hereafter obtained in any court other than this court is null and void as a determination of the personal liability of the debtor with respect to any of the following:

(a) debts dischargeable under 11 U.S. C. § 523;

(b) unless heretofore determined by order of this court to be nondischargeable, debts alleged to be excepted from discharge under clauses (2), (4) and (6) of 11 U.S.C. § 523(d).

3. All creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void by paragraph 2 above are enjoined from instituting or continuing any action or employing any process to collect such debts as personal liabilities of the above named debtor.

DATED: March 26, 1985
BY THE COURT

/s/ Edward D. Hayes
United States Bankruptcy Judge
EDWARD D. HAYES

OFFICE OF THE CLERK

U.S. Bankruptcy Court

234 U.S. Courthouse

Rochester, New York 14614