**NATIONAL LABOR RELATIONS BOARD and Road Sprinkler Fitters Local 669, a Constituent Unit of United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Appellants,**

v.

**James M. GOODMAN and Goodman Automatic Sprinkler Corp., Appellees/Debtor.**

**No. CIV–88–287T.**

United States District Court, W.D. New York.

Aug. 31, 1988.

Margery Lieber, Asst. Gen. Counsel for Special Litigation–N.L.R.B., Beins, Axelrod & Osborne (William W. Osborne, Jr., of counsel), Washington, D.C., Chamberlain, D'Amanda, Oppenheimer & Greenfield (Michael T. Harren, of counsel), Rochester, N.Y., for appellants.

Bruce R. Zirinsky, New York City, Douglas J. Lustig, Rochester, N.Y., for appellees/debtor.

## DECISION and ORDER

TELESCA, District Judge.

### INTRODUCTION

Appellants the National Labor Relations Board ("NLRB") and the Road Sprinkler Fitters Local 669 ("the Union") appeal from the January 25, 1988 Decision and Order of the United States Bankruptcy Court, Honorable Edward D. Hayes, prohibiting appellants from continued enforcement of the General Counsel's unfair labor practice complaint against appellees James M. Goodman ("Goodman") and Goodman Automatic Sprinkler Corporation ("GASC"). *Goodman v. NLRB*, 81 B.R. 786 (Bankr.W. D.N.Y.1988).

This appeal focuses on the interplay between the National Labor Relations Act ("NLRA") and the Bankruptcy Code. The question on appeal is whether the bankruptcy court correctly found that Goodman's personal discharge under Chapter 7 shields both him and GASC from liabilities imposed by the NLRB upon predecessor corporations arising from labor law violations.

### FACTS

Goodman and another party formed E.G. Sprinkler Corporation ("EGSC") in 1973. Goodman subsequently bought out the other party, and became the sole shareholder of EGSC. In 1979, EGSC entered into a collective bargaining agreement (the "CBA") with the Union, due to expire by its own terms on March 31, 1982.

In May, 1981, Victoria Goodman, Goodman's wife, formed Goodman Piping Products, Inc. ("GPPI"). On December 31, 1981, EGSC ceased operations and all or substantially all of its assets were liqui-

dated. GPPI refused to adhere to the CBA negotiated by EGSC, and withdrew recognition from the Union. Based on charges filed by the Union, an Administrative Law Judge of the NLRB found that GPPI was the alter ego of EGSC, that GPPI and EGSC had committed certain unfair labor practices, and that both corporations were liable for the obligations under the CBA. These findings were affirmed by the NLRB, which issued an order requiring GPPI to recognize and bargain with the Union and honor, implement and apply the agreement. *E.G. Sprinkler Corp.*, 268 NLRB 1241 (1984), *enf'd Goodman Piping Products, Inc. v. NLRB*, 741 F.2d 10 (2d Cir.1984). No charges were filed against Goodman in connection with these proceedings.

The 1984 NLRB order required that EGSC and GPPI: (1) recognize and bargain with the Union; (2) honor and implement all terms of the CBA entered into by EGSC and the Union in April, 1979; (3) reimburse the Union for any payments due to the union benefit fund or otherwise owing pursuant to the CBA; and (4) make whole Union employees for losses suffered during the period in which GPPI and EGSC did not honor the agreement.

In December, 1984 GPPI ceased operations. Goodman filed an individual voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Goodman listed the NLRB as an unsecured creditor for a disputed and undetermined amount of employee wages and benefits. On March 16, 1985, the bankruptcy court entered an Order of Discharge, discharging *Goodman* of all dischargeable debts pursuant to § 523 of the Code.

On April 17, 1985, EGSC and GPPI filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code. These petitions listed the NLRB as an unsecured creditor for a disputed and undetermined amount of employee wages and benefits. The NLRB filed proofs of claim on May 21, 1985. On July 3, 1985, the NLRB issued an unpublished supplemental Decision and Order assessing backpay and trust fund obligations against EGSC and GPPI, which was enforced by the Second Circuit in 1987. On August 16, 1985, the Bankruptcy Court entered orders closing the estates of EGSC and GPPI, pursuant to the trustees' reports of no distribution. No discharge was granted since corporations are not entitled to a discharge under Chapter 7. 11 U.S.C. § 727(a)(1).

In June 1985, Goodman formed GASC, and became its sole shareholder. GASC commenced operations in September of 1985. On November 21, 1986, the NLRB issued a complaint and notice of hearing against EGSC, GPPI, Goodman and GASC. The complaint alleges that GPPI, GASC, and Goodman are alter egos of EGSC, and that all of the defendants have and continue to commit unfair labor practices by: (1) failing to comply with the 1984 NLRB Order; (2) failing to apply the terms of the CBA; (3) refusing to bargain with the Union; and (4) failing to produce information requested by the Union. On August 17, 1987, the NLRB amended the complaint to eliminate all pre-petition monetary claims against Goodman arising from the 1984 Board order against EGSC and GPPI.

## BANKRUPTCY COURT PROCEEDINGS

On July 20, 1987, Goodman and GASC filed a complaint in bankruptcy court alleging that the NLRB and the Union were engaging in conduct in violation of the Court's Discharge Order. The complaint seeks: (1) a declaration that the NLRB and the Union are seeking to enforce claims against Goodman and GASC which were discharged in bankruptcy; (2) a declaration that the attempted enforcement violates the Court's Discharge Order; (3) an order permanently enjoining the NLRB and the Union from commencing or continuing actions to enforce the pre-petition obligations; and (4) sanctions for contempt.

On August 3, 1987, the bankruptcy court issued its Decision and Order with respect to the Union's motion to dismiss, the NLRB's motion for summary judgment, and Goodman and GASC's cross-motion for summary judgment. Judge Hayes found that he could consider Goodman's claims

under the bankruptcy court's jurisdiction to enforce its discharge orders. While he found that GASC as a non-debtor could not invoke the bankruptcy court's jurisdiction, he concluded that its claims could be adjudicated derivatively through Goodman's lawsuit. With respect to the merits, Judge Hayes found that any continuing obligations under the CBA were rejected by the Chapter 7 trustee. While the NLRB appropriately submitted a claim for wage and benefit arrears based on the 1984 NLRB order, the claim submitted did not address the loss occasioned by failure to submit to collective bargaining. Judge Hayes rejected the NLRB's argument that the loss occasioned by failure to submit to collective bargaining is not a "claim" under the bankruptcy law. He concluded that such a loss should have been included in the NLRB's claim, and therefore cannot now be asserted against Goodman. He further held that GASC is the manifestation of Goodman's fresh start in bankruptcy, and therefore the bargaining obligations could not be enforced against GASC.

With respect to the monetary obligations sought to be enforced by the NLRB, Judge Hayes held that the NLRB and the Union are seeking to enforce pre-petition obligations against Goodman and GASC, his after-acquired property. He apparently held that GASC is not the alter-ego of EGSC and GPPI, and refused to enforce the monetary obligations against GASC "in the guise of alter-ego liability". Judge Hayes further refused to enforce the monetary obligations against Goodman in his capacity as principal of GASC. He then ordered that the NLRB and the Union cease all efforts to enforce any obligations arising prior to December 24, 1984. The NLRB and the Union appeal from these findings and the court's order.

## DISCUSSION

### I. *Bankruptcy Court's Jurisdiction.*

#### A. Goodman and GASC.

Judge Hayes found that the Bankruptcy Court had jurisdiction to determine Goodman's claim that the NLRB enforcement proceedings violate Goodman's discharge order, and that the Court could adjudicate GASC's claims derivatively through Goodman's lawsuit. I agree that the bankruptcy court had jurisdiction to determine these claims with respect to Goodman, but conclude that GASC should have been dismissed from the action.

The bankruptcy court has jurisdiction to determine the dischargability of debts. 28 U.S.C. § 157(b)(2)(I). Moreover, once a discharge has been granted, the bankruptcy court may issue orders designed to carry out the provisions of Title 11. 11 U.S.C. § 105(a). Sections 524(a)(1) and (2) of that Title provide that a discharge voids all judgments determining personal liability of the debtor with respect to certain discharged debts, and operates as an injunction against actions to collect any such debts as a personal liability of the debtor.

The primary question in this case is whether the attempts by the NLRB and the Union to enforce the 1986 complaint violate the bankruptcy court's order granting Goodman a discharge. Only Goodman, as the discharged debtor, has standing to assert this claim. GASC was not a party to the Chapter 7 proceedings. Nor has GASC been granted a discharge. Thus, GASC cannot invoke the bankruptcy court's jurisdiction on the basis of Goodman's discharge in an attempt to stay enforcement of the 1986 NLRB complaint. Therefore, GASC should have been dismissed as a party to this adversary proceeding.

However, it is equally clear that Goodman himself has standing to assert that enforcement of the 1986 NLRB complaint against GASC violates his Chapter 7 discharge. Whether he will succeed with respect to that claim is a different matter; however, the bankruptcy court had jurisdiction to consider the claim.

#### B. Alter–Ego Determination

In connection with the enforcement of obligations against GASC, the bankruptcy court determined that GASC was not the alter-ego of EGSC or GPPI. The NLRB and the Union contend that the bankruptcy court was without jurisdiction to make this

determination because the authority to determine whether an unfair labor practice has been committed under § 8 of the NLRA lies exclusively with the NLRB. I find that the question of whether an unfair labor practice has been committed, and the subsidiary question of the alter-ego status of GASC and Goodman, are collateral issues to the bankruptcy proceeding and, therefore, properly considered by the bankruptcy court if necessary to determine Goodman's central claims.

In the 1986 complaint, the NLRB alleges that Goodman and GASC are alter-egos of EGSC and that they have therefore committed and continue to commit unfair labor practices by failing to comply with the 1984 NLRB order and failing to bargain with the Union. The doctrine of primary jurisdiction " 'comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.' " *Local Union No. 189 v. Jewel Tea Co., Inc.,* 381 U.S. 676, 85 S.Ct. 1596, 1599, 14 L.Ed.2d 640 (1965) (quoting *United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956)). Under the doctrine of primary jurisdiction, the courts are not the "primary tribunals" to adjudicate whether particular activities are governed by § 8 of the NLRA. "It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board." *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). Thus, as a general rule, the federal courts do not have jurisdiction over suits directly involving activity which is arguably subject to § 8 of the NLRA. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 911, 17 L.Ed.2d 842 (1967).

However, the federal courts have jurisdiction to determine the scope and application of § 8 where the question arises as a collateral issue. The "federal courts may decide labor law questions that emerge as collateral issues in suits brought under independent federal remedies, including the anti-trust laws." *Connell Construction Co., Inc. v. Plumbers & Steamfitters Local Union No. 100,* 421 U.S. 616, 95 S.Ct. 1830, 1837, 44 L.Ed.2d 418 (1975) (jurisdiction proper where employer commenced action against union challenging picketing and union subcontracting agreement under the anti-trust laws, and union claimed in defense that agreement was permitted under the NLRA); *see also, Local Union No. 189 v. Jewel Tea Co., Inc.,* 85 S.Ct. at 1600 (jurisdiction proper where employer sued union and officers seeking invalidation of contract provision as violation of anti-trust laws and union contended that restriction amounted to a term or condition of employment to be decided by the Board).

In a recent decision, the Supreme Court held that while the NLRB has primary jurisdiction over a § 8(a)(3) claim, the federal courts may decide the merits of that claim where such a decision is necessary to dispose of other federal claims. In *Communications Workers of America v. Beck,* — U.S. ——, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988), non-union employees alleged that exaction of union fees beyond those necessary to finance collective bargaining violated § 8(a)(3), the union's duty of fair representation, and the employee's First Amendment rights. The Supreme Court held that the employees' § 8 claim should have been dismissed since it fell within the primary jurisdiction of the NLRB. *Id.* at ——, 108 S.Ct. at 2647. However, the Court concluded that since the union contended that the NLRA authorized the agreement challenged, the federal courts had jurisdiction to decide the merits of the § 8(a)(3) question raised as a defense to the duty of fair representation claim.

Similarly, the question of whether Goodman and GASC are alter-egos of EGSC, and therefore guilty of committing unfair labor practices, is a collateral issue to this adversary proceeding which primarily concerns the scope of Goodman's discharge. The effect of Goodman's discharge was appropriately addressed by the bankruptcy court. The NLRB has no expertise in this

area.[1] Therefore, to the extent that a determination of Goodman's and GASC's alter-ego status was necessary to the disposition of Goodman's claim that the enforcement proceedings violated his discharge, the question was appropriately considered by the Bankruptcy Court.[2]

## II. *Action Against Goodman.*

### A. Duty to Recognize Union and Bargain in Good Faith.

Judge Hayes found that the asserted obligations to recognize and bargain with the Union could not be enforced against either Goodman or GASC. He found that the trustee had implicitly rejected the CBA, but that the NLRB had failed to submit a claim based on the loss occasioned by the failure to submit to collective bargaining. The Union and the NLRB contend that these conclusions are erroneous because the bargaining obligation is based on an independent statutory right distinct from the CBA, that the CBA was not an executory contract at the time of discharge and, therefore, could not have been accepted or rejected by the trustee.

The NLRB and the Union further maintain that by virtue of his alleged alter-ego status, Goodman has a statutory duty to honor the terms of the CBA and to recognize and bargain collectively with the Union. The remedies for such unfair labor practices can take two forms, as outlined in the 1984 NLRB order: (1) monetary obligations to make payment to Union trust funds pursuant to the CBA, and back pay to employees based on failure to honor the CBA and losses occasioned by their refusal to bargain; and (2) a non-monetary bargaining order.

■ I find that the effect of Goodman's discharge order on the non-monetary obligations sought to be enforced is governed by the Supreme Court's holding in *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) superseded by statute as stated in *Truck Drivers' Local 807 v. Carey Transportation, Inc.*, 816 F.2d 82, 88 (2d Cir.1987). In that case, the Supreme Court concluded that a Chapter 11 debtor in possession should be permitted to reject a collective bargaining agreement where the bankruptcy court finds that such action would serve the goal of permitting successful rehabilitation of the debtor. The court further held that such rejection would give rise to a claim to be administered in the bankruptcy proceeding. However, the NLRB is precluded from effectively enforcing the collective bargaining agreement by filing an unfair labor practice charge against the debtor in possession for violating § 8(d) of the NLRA. Similarly, the corresponding duty to bargain to impasse before seeking rejection is abrogated. However, the court made it clear that the debtor in possession is not relieved of all obligations under the NLRA simply by filing a petition for bankruptcy. The court emphasized that the debtor in possession remains an employer within the terms of the Act, and is obligated to bargain with the certified representative over the terms of the *new* contract pending rejection of the existing collective bargaining agreement or following formal

---

1. I recognize that the bankruptcy court similarly has little or no expertise in resolving unfair labor practice issues under the NLRA. However, thus far, the parties have failed to invoke the mandatory withdrawal provisions of 28 U.S.C. § 157(d).

2. I recognize that this exception to the doctrine of primary jurisdiction is based to some degree upon judicial economy. "[T]he doctrine of primary jurisdiction is not a doctrine of futility; it does not require resort to 'an expensive and merely delaying administrative proceeding when the case must eventually be decided on a controlling legal issue wholly unrelated to determinations for the ascertainment of which the proceeding was sent to the agency.'" *Local*

*Union No. 189 v. Jewel Tea Co., Inc.*, 85 S.Ct. at 1600 (quoting *Federal Maritime Board v. Isbrandtsen Co.*, 78 S.Ct. 851, 873 (1958) (Frankfurter, J., dissenting)).

Judicial economy may well have been best served in this instance by allowing the NLRB to rule upon the complaint. Goodman could have raised his discharge as a defense to that proceeding and to enforcement. The Second Circuit could have easily considered all the claims currently before this Court. However, in light of the Bankruptcy Court's jurisdiction over the scope of its discharge orders and the necessity of protecting the integrity of such orders, I find that the Bankruptcy Judge appropriately considered the arguments raised below.

approval of that rejection by the bankruptcy court.

In this case, the NLRB alleges that Goodman is an employer within the meaning of the NLRA because of his alleged alter-ego status. Although the NLRB and the Union attempt to distinguish *Bildisco* on the grounds that there was no executory contract at the time Goodman's discharge was granted, the 1984 NLRB order and the 1986 NLRB complaint both seek to impose the terms of the original CBA with EGSC. The Board's own orders and complaints seek to make that CBA an executory contract. Thus, under *Bildisco*, Goodman was entitled to reject the CBA without bargaining prior to his discharge. However, *Bildisco* requires that employers continue to comply with the requirements of the NLRA with respect to bargaining for *new* agreements. Thus, while following his discharge, Goodman cannot be required to comply with the terms of the CBA, he can be required to bargain with the Union pursuant to § 8 of the NLRA.[3]

The 1986 NLRB complaint alleges that Goodman, as the alter-ego of EGSC, is under a duty to bargain with the Union under § 8 of the NLRA. This alleged duty presumably arises from Goodman's post-petition conduct in organizing GASC. It has nothing to do with the rejected CBA. *Bildisco* teaches that the debtor in possession remains the same entity throughout the bankruptcy proceedings—it is merely entitled to deal with its contracts in a different manner. *NLRB v. Bildisco and Bildisco*, 104 S.Ct. at 1197. However, the debtor remains an employer before, during, and following the bankruptcy proceedings. Therefore, it must abide with the mandatory bargaining provisions of the NLRA. Similarly, the NLRB alleges here that Goodman is an employer by virtue of his alter-ego status with EGSC. He remains such even following his bankruptcy discharge. If his alter-ego status is proven— an issue I do not address here—he can be subjected to a bargaining order by the NLRB based on his post-petition conduct,

and such an order is not barred by his Chapter 7 discharge.

### B. Monetary Obligations.

The same reasoning applies with respect to the monetary obligations sought to be imposed upon Goodman. The NLRB has amended its complaint to make clear that it does not seek to hold Goodman responsible for any pre-petition monetary liability arising from the 1984 Board order. Similarly, *Bildisco* makes clear that any monetary obligations arising from Goodman's implicit rejection of the CBA should have been reduced to a claim and submitted to the bankruptcy court. However, any monetary obligations arising from Goodman's alleged post-petition status as an employer and post-petition refusal to bargain for a new agreement with the Union were not discharged and may now be asserted.

### III. *Effect of Goodman's Discharge on Proceedings Against GASC.*

Judge Hayes held that the NLRB cannot proceed against GASC with respect to either the monetary or non-monetary obligations sought to be enforced in the 1986 NLRB complaint. He characterized GASC as Goodman's "livelihood", "the manifestation of his fresh start in bankruptcy", and his "after acquired property". *In re Goodman*, 81 B.R. at 792, 793. He concluded that enforcement of the non-monetary and the monetary obligations against GASC would amount to "satisfying pre-petition indebtedness out of post-petition property". *In re Goodman*, 81 B.R. at 793. I disagree.

In *NLRB v. Better Building Supply Corp.*, 837 F.2d 377 (9th Cir.1988), the Ninth Circuit held that the Chapter 7 discharge of the corporation's controllers and managers did not prohibit enforcement of a post-petition NLRB complaint against an alter-ego corporation. In that case, the Mylans conducted a roofing business through several different corporations over a period of ten years. The NLRB found that their first corporation engaged in un-

---

**3.** Goodman and GASC contend that the Union is not the certified bargaining representative for the employees of GASC. That point was not addressed or argued below and will not be considered by this Court.

fair labor practices and assessed back pay damages. A second corporation was found to be the alter-ego of the first and was similarly ordered to pay damages. Following the Chapter 7 discharge of all "dischargable debts", the Mylans created yet another corporation. The NLRB found that this latest corporation was the alter-ego of the first corporation based on common control and management by the Mylans and the similarity of the work performed. It rejected their argument that the back pay debt had been discharged and petitioned for enforcement.

The Ninth Circuit found that the NLRA damage judgment survived the bankruptcy proceedings as a corporate debt. In reaching this conclusion it noted that partnerships and corporations may not be discharged under Chapter 7. *Id.* at 378 (citing 11 U.S.C. § 727(a)(1)). The court further found that § 727(a)(1) was designed to prohibit businesses from evading liability, such as obligations imposed by the NLRB, by liquidating debtor corporations and resuming business free from debt. *Id.* at 379. The court reasoned that if the Mylans had conducted their post-discharge business through either of their two initial corporations, those corporations would remain liable for the NLRB judgment. Because the post-petition corporation was found to be the alter-ego of the initial corporation, the post-petition corporation was similarly liable. The Ninth Circuit further rejected the Mylans' argument that because the NLRB based its alter-ego finding on the Mylans' extensive personal involvement, the debt was personal and subject to discharge under Chapter 7. *Id.* at 379.

Similarly, in *NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934 (6th Cir.1986), the Sixth Circuit held that enforcement against an alter-ego partnership was not barred by the Chapter 7 discharge of one of the partners. In *Edward Cooper Painting, Inc.,* the corporation was found to have engaged in unfair labor practices. The corporation's sole owner and operator subsequently engaged in the same business with another individual as a partnership. The NLRB found that the partnership was the alter-ego of the corporation and sought

enforcement against it on that basis. The Sixth Circuit granted enforcement against the partnership despite the Chapter 7 discharge of the individual partner who had also been the sole owner and manager of the corporation. The court concluded, "The partnership entity, not Henry Edward Cooper, is the party to this proceeding, and the Board's order is fully enforceable against that entity." *Id.* at 943–44.

These decisions make clear that a discharged Chapter 7 debtor's ownership interest in an entity found to be the alter-ego of a company guilty of unfair labor practices does not shield the alter-ego entity from liability. Although neither of the courts in *Better Building Supply Corp.* and *Edward Cooper Painting, Inc.* explicitly addressed the after-acquired property arguments raised by Goodman, ownership, control, and management of the alter-ego entities by the Chapter 7 debtor was shown in each instance. Those courts implicitly rejected the notion that the alter-ego business entities constituted the "fresh start" of the individual Chapter 7 debtor and therefore were protected by virtue of that discharge. I agree with this reasoning, and conclude that Goodman's Chapter 7 discharge does not shield GASC from prosecution and enforcement of the 1986 NRLB complaint in any respect.

However, the 1986 NLRB complaint can only be enforced against GASC and Goodman if they are determined to be the alter-egos of EGSC and GPPI. The alter-ego theory was not addressed by the bankruptcy court below with respect to Goodman. Moreover, although Judge Hayes found that GASC was not the alter-ego of EGSC, the record was not adequate for such a determination, and the court did not consider all of the factors relevant to the alter-ego determination under NLRB precedents. Compare *In Re Goodman,* 81 B.R. at 793 (considering similarity of "assets, employees, or business opportunities") with *Goodman Piping Products, Inc. v. NLRB,* 741 F.2d 10, 11 (2d Cir.1984) (factors to be considered include whether two enterprises have substantially identical management, business purpose, operation, equipment,

customers, supervision, and ownership). In addition, with respect to the adequacy of the record, I find that certain facts are in dispute. Although the NLRB moved for summary judgment, they did so based on their argument that the bankruptcy court had no jurisdiction to determine the alter-ego question. I reject Goodman's arguments that the NLRB and the Union failed to dispute any of the material facts concerning the alter-ego status of Goodman and GASC. Moreover, the fact that both sides moved for summary judgment does not guarantee that there is no material issue of fact to be tried. *Schwabenbauer v. Board of Education,* 667 F.2d 305, 313–314 (2d Cir.1981); *Eastman Machine Co., Inc. v. United States,* 841 F.2d 469, 473 (2d Cir.1988). Therefore, this case must be remanded to the bankruptcy court for further proceedings including a possible evidentiary hearing concerning whether Goodman and GASC are alter-egos of EGSC and GPPI pursuant to the applicable labor law standards.

### CONCLUSION

I conclude that GASC has no standing in this proceeding and must be dismissed from the complaint. I further find that Goodman's Chapter 7 discharge shields him from liability with respect to monetary and non-monetary obligations arising from the implicit rejection of the collective bargaining agreement originally entered into between EGSC and the Union. However, Goodman's discharge does not shield him from any alleged post-petition obligations to bargain with the Union over a new contract following implicit rejection of the collective bargaining agreement. Nor does Goodman's Chapter 7 discharge shield GASC from any of the obligations alleged in the 1986 NLRB complaint. However, this case must be remanded to the bankruptcy court for further development of the record and consideration of the alleged alter-ego status of Goodman and GASC pursuant to applicable labor law standards.

WHEREFORE, the order of the Bankruptcy Court is affirmed in part, reversed in part, and remanded for further proceedings in accordance with this decision.

ALL OF THE ABOVE IS SO ORDERED.