In re James M. GOODMAN, Debtor.

NATIONAL LABOR RELATIONS BOARD and Road Sprinkler Fitters Union Local 669, a Constituent Unit of United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL–CIO, Plaintiffs–Appellants–Cross–Appellees,

v.

James M. GOODMAN and Goodman Automatic Sprinkler Corp., Defendants–Appellees–Cross–Appellants.

Nos. 814–816, Dockets 88–5033, 88–5039 and 88–5041.

United States Court of Appeals, Second Circuit.

Argued Feb. 24, 1989.

Decided April 20, 1989.

Diane Rosse, N.L.R.B., Washington, D.C. (Rosemary M. Collyer, Gen. Counsel, Robert E. Allen, Assoc. Gen. Counsel, Margery E. Lieber, Asst. Gen. Counsel, N.L.R.B., Washington, Natl. Labor Relations Bd., on the brief), for plaintiff-appellant-cross-appellee N.L.R.B.

William W. Osborne, Jr., Washington, D.C. (Kathleen T. Quinn, Beins, Axelrod & Osborne, Washington, D.C., on the brief), for plaintiff-appellant-cross-appellee Road Sprinkler Fitters Local Union 669.

Bruce R. Zirinsky, New York City (Pamela J. Corrie, Weil, Gotschal & Manges, New York City; Douglas J. Lustig, Rochester, N.Y., on the brief), for defendants-appellees-cross-appellants.

Before OAKES, Chief Judge, and
NEWMAN, Circuit Judge, and
HAIGHT, District Judge.[*]

JON O. NEWMAN, Circuit Judge:

This appeal involves the interplay between bankruptcy and labor law, and requires us to chart the jurisdictional boundaries between the National Labor Relations Board and the Bankruptcy Court. The NLRB and the Road Sprinkler Fitters Union Local 669 ("the Union" or "Local 669") have filed unfair labor practice charges against James M. Goodman and his company, Goodman Automatic Sprinkler Corp. ("GASC"). They claim that Goodman and GASC, as "alter egos" of two defunct companies that committed unfair labor practices, have succeeded to their predecessors' labor law liability. In a counter-attack, Goodman and GASC obtained an order from the Bankruptcy Court for the Western District of New York (Edward D. Hayes, Judge) barring the Labor Board proceedings on the ground that Goodman's discharge under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 727 (1982), and the Code's "fresh start" policy shield him from liability for the labor law violations of the predecessor companies. *In re Goodman*, 81 B.R. 786 (Bankr.W.D.N.Y.1988). The District Court for the Western District of New York (Michael A. Telesca, Judge) affirmed the Bankruptcy Court ruling in

---

[*] The Honorable Charles S. Haight, Jr. of the United States District Court for the Southern District of New York, sitting by designation.

part, reversed in part, and remanded in part for reconsideration of whether Goodman and GASC were successors of the two defunct companies. *NLRB v. Goodman*, 90 B.R. 56 (W.D.N.Y.1988).

The NLRB and Local 669 appeal from the District Court's remand order, contending that the NLRB has primary jurisdiction over the successorship issue. Goodman and GASC cross-appeal, contending that the Bankruptcy Court correctly decided both that Goodman and GASC were not successors and that they should not be subject to the NLRB proceedings.

We agree with the Labor Board and the Union that the NLRB has primary jurisdiction over the successorship issue and that the Bankruptcy Court's order barring the NLRB proceedings should be lifted. We therefore reverse in part and remand.

Background

In 1973, appellant Goodman founded and subsequently became the sole shareholder of E.G. Sprinkler Corp. ("EG"), a company that installed, maintained, and repaired fire protection and control systems. EG entered into a collective bargaining agreement with Local 669 in 1979, effective through March 31, 1982. In May 1981, Goodman's wife formed a new company, Goodman Piping Products, Inc. ("GPP"), with Mrs. Goodman serving as sole stockholder, director, and officer. On December 3, 1981, EG ceased operations and liquidated virtually all of its assets. Shortly thereafter, Goodman began working on the installation and maintenance of fire protection equipment through GPP, but GPP refused to adhere to the collective bargaining agreement negotiated by EG.

The NLRB brought unfair labor practice charges against GPP, alleging that GPP was an alter ego of EG and therefore had succeeded to EG's duty to recognize and bargain with the Union and to honor and implement the collective bargaining agreement. The Board order required that GPP: (1) recognize and bargain with Local 669, (2) honor and implement all terms of the 1979 collective bargaining agreement, (3) reimburse Local 669 for payments to bene-

fits funds due under the collective bargaining agreement, and (4) give backpay to Union employees for losses suffered during the period when EG and GPP did not honor the agreement. On review by this Court, we enforced the Board's order. *Goodman Piping Products, Inc. v. NLRB*, 741 F.2d 10 (2d Cir.1984).

In December 1984, several months after our decision in *Goodman Piping Products*, GPP ceased operations. That same month, Goodman filed an individual voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Goodman listed the NLRB as an unsecured creditor for a disputed and undetermined amount of employee wages and benefits. On March 16, 1985, the Bankruptcy Court entered an order discharging Goodman of all dischargeable debts pursuant to section 523 of the Code.

EG and GPP also filed in bankruptcy under Chapter 7 in April, 1985. They each listed the NLRB as an unsecured creditor holding a disputed claim for employee wages and benefits. The NLRB filed proofs of claim on May 21, 1985. A trustee appointed by the Bankruptcy Court found that the EG and GPP had no assets, and the Court entered an order closing the estates of the two companies on August 16, 1985.

Meanwhile, in July, 1985, the NLRB issued a supplemental decision assessing the backpay and trust fund obligations owed by EG and GPP. This Court granted the NLRB's application for summary enforcement of the supplemental order in April, 1987.

Prior to the close of the EG and GPP bankruptcies, Goodman formed yet another company, GASC, in which he was again the sole shareholder, and which also engaged in the installation, repair, and maintenance of automatic sprinkler and fire protection systems. GASC began operations in September, 1985. On November 21, 1986, the NLRB issued a complaint and notice of hearing against EG, GPP, Goodman, and GASC. The Labor Board charged that Goodman, GASC, and GPP were all alter egos of EG, and that they all had committed or were committing unfair labor prac-

tices by: (1) failing to comply with the 1984 NLRB order, (2) failing to comply with the terms of the 1979 collective bargaining agreement, (3) refusing to bargain with Local 669, and (4) failing to produce information requested by the Union. The NLRB later amended the complaint to eliminate all pre-petition monetary claims against Goodman as an individual arising from the 1984 Board order against EG and GPP.

On July 20, 1987, Goodman and GASC filed a complaint with the Bankruptcy Court alleging that the actions of the Union and the NLRB were violating Goodman's Chapter 7 discharge. The complaint sought (1) a declaration that the NLRB and Local 669 were seeking to enforce against Goodman and GASC claims that had been discharged in bankruptcy and (2) a permanent injunction prohibiting the NLRB and the Union from commencing or continuing actions to enforce the pre-petition obligations.

On August 3, on cross-motions for summary judgment, the Bankruptcy Court issued a decision and order granting the relief sought by Goodman.[1] The Bankruptcy Judge found that any claims against Goodman arising from the EG collective bargaining agreement had been discharged in Goodman's Chapter 7 proceeding and therefore could not be pursued by the NLRB and the Union. The Bankruptcy Court ruled that GASC was not entitled to invoke the Bankruptcy Court's jurisdiction directly, because GASC was a non-debtor and had never been discharged, but that GASC was Goodman's after-acquired property and therefore was shielded by Goodman's discharge. 81 B.R. at 790. The Court rejected on the merits the NLRB's claim that GASC was an alter ego of EG and GPP. The Court found that GASC had succeeded to none of the assets, employees, or business opportunities of EG and GPP, and that GASC was thus a distinct entity acquired post-petition by Goodman and was protected by Goodman's discharge against

all obligations having their genesis prior to his Chapter 7 filing. Id. at 793. The Bankruptcy Judge did not consider the NLRB's claim that Goodman himself was an alter ego of EG and GPP.

The NLRB and Local 669 appealed the Bankruptcy Court's order to the District Court. The District Court affirmed in part and reversed and remanded in part. Judge Telesca affirmed the Bankruptcy Court's ruling that GASC, as a non-debtor, had no direct standing to invoke the Court's jurisdiction. 90 B.R. at 63. He also ruled that Goodman's Chapter 7 petition and discharge entitled Goodman to reject any pre-petition obligations he had individually under the collective bargaining agreement. Id. at 62. But the District Judge said that if Goodman's post-petition conduct made Goodman an alter ego of EG and GPP, his discharge would not shield him from liability for EG's and GPP's past unfair labor practices and from an order to bargain with the Union. Id.

The District Court ruled that the Bankruptcy Court had jurisdiction to decide whether Goodman and GASC were alter egos of EG and GPP, because the question was collateral to the bankruptcy proceeding. Id. at 60–61. The District Judge remanded the alter ego issue to the Bankruptcy Court, however, saying that the Bankruptcy Judge had not applied the appropriate criteria in finding that GASC was not an alter ego. Id. at 63–64.

### Discussion

#### 1. Appellate Jurisdiction

■ Ordinarily, a remand to the bankruptcy court by a district court is not a final, appealable order under 28 U.S.C. § 158(d) (1982), unless the remand effectively settles an issue and orders the bankruptcy court to perform merely a ministerial task. See In re Vekco, Inc., 792 F.2d 744 (8th Cir.1986); In re Fox, 762 F.2d 54 (7th Cir.1985). In this case, however, the

---

1. Although the Bankruptcy Judge declined to issue a formal injunction, he ordered that any attempt by the NLRB to enforce the obligations and liabilities of EG and GPP against Goodman

and GASC would be punishable by contempt. The order thus had the effect of an injunction, and we treat it as such for purposes of this appeal.

Bankruptcy Court effectively enjoined the Labor Board from proceeding against Goodman and GASC. The District Court's order, although remanding a substantive issue for reconsideration by the Bankruptcy Court, refused to dissolve the injunction. The order is therefore appealable under 28 U.S.C. § 1292(a)(1) (1982).

## 2. Scope of Chapter 7 Discharges

Goodman's principal contention is that his Chapter 7 discharge shields him and GASC from any liability relating to his pre-petition obligations or the obligations of EG and GPP. Goodman argues either that he and GASC are not successors of EG and GPP for the purposes of labor law liability, or, in the alternative, that even if he and GASC are successors, the Chapter 7 "fresh start" policy requires that they be shielded from liability for EG's and GPP's unfair labor practices.

■ Taking the second contention first, we do not agree that Goodman's discharge protects him and GASC from liability if they are found to be successors of EG and GPP. Goodman's Chapter 7 liquidation discharged all of his personal, pre-petition obligations, but did not discharge the corporate debt of EG and GPP. The 1978 revision of the Bankruptcy Code makes it quite clear that while individuals may be discharged of their debts pursuant to Chapter 7, corporations may not. 11 U.S.C. § 727(a)(1); *see also* 4 *Collier on Bankruptcy* Para. 727.01[2] (15th ed.) The Senate Report accompanying the 1978 revision explains that Congress deliberately excluded corporations from eligibility for discharge under Chapter 7 to avoid trafficking in corporate shells and in bankrupt partnerships. S.Rep. No. 989, 95th Cong., 2d Sess. 98 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5884.

■ Thus, neither Goodman's discharge nor the closing of the bankruptcy estates of EG and GPP cancelled EG's and GPP's unfair labor practice liabilities. Because EG's and GPP's unfair labor practice liabilities were not discharged, any successor or alter ego of these corporations will become liable for those obligations. *See*

*NLRB v. Better Bldg. Supply Corp.*, 837 F.2d 377, 379 (9th Cir.1988); *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 943–44 (6th Cir.1986). We agree with the District Court that GASC cannot be shielded from liability as a successor to EG and GPP because GASC itself has never obtained a discharge in bankruptcy. We also agree that Goodman himself may be subjected to EG and GPP's liabilities, if he is their alter ego. Goodman was discharged only of his pre-petition obligations. His discharge does not act prospectively to shield him from post-petition liabilities. Thus, if his post-petition conduct makes him an alter ego of EG and GPP, he too, like GASC, would succeed to EG's and GPP's obligations.

This conclusion does not conflict with the "fresh start" policy of Chapter 7. Goodman is free to acquire new property unburdened by his pre-petition debt. *See Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1933). But he may not make an end-run around the Bankruptcy Code and the National Labor Relations Act (NLRA) by using his personal discharge as permanent insulation against liability for his post-petition conduct, nor may he enlist such conduct to effectively discharge the corporate obligations of EG and GPP.

## 3. Jurisdiction Over Successorship Determination

The liability of Goodman and GASC for EG's and GPP's labor law obligations hinges solely on whether Goodman and GASC are in fact alter egos of EG and GPP. The issue we now confront is whether it is the Bankruptcy Court or the NLRB that has jurisdiction to make that determination.

The NLRB has primary jurisdiction over activity that is arguably subject to Sections 7 and 8 of the NLRA. Federal courts must defer to the exclusive competence of the Board to adjudicate such claims. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). Whether a new employer is an alter ego of, or a successor to, an earlier employer for purposes of liability under the NLRA is a question of substan-

tive federal labor law. The Labor Board has expertise in adjudicating successorship issues, and there is an interest in having uniform determinations by a single agency. *See Aquabrom v. NLRB*, 746 F.2d 334, 336 (6th Cir.1984); *Computer Sciences Corp. v. NLRB*, 677 F.2d 804, 807–08 (11th Cir. 1982). Thus, the question of successorship normally falls within the Labor Board's primary jurisdiction. *See In re Bel Air Chateau Hospital, Inc.*, 611 F.2d 1248, 1251 (9th Cir.1979).

 The District Court ruled that despite the Labor Board's primary jurisdiction over successorship, the Bankruptcy Court had jurisdiction to adjudicate the issue because it was collateral to the bankruptcy proceedings. We disagree. We do not believe that this case falls within the "collateral issue" exception to the Labor Board's primary jurisdiction.

Federal courts may decide labor law questions that "emerge as collateral issues in suits brought under independent federal remedies." *Communications Workers of America v. Beck*, — U.S. —, 108 S.Ct. 2641, 2647, 101 L.Ed.2d 634 (1988) (quotation omitted); *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 85–86, 102 S.Ct. 851, 860–861, 70 L.Ed.2d 833 (1982); *Connell Constr. Co. v. Plumbers and Steamfitters Local Union 100*, 421 U.S. 616, 626, 95 S.Ct. 1830, 1837, 44 L.Ed.2d 418 (1975). *Connell*, for example, involved a suit challenging the provision of a collective bargaining agreement as a violation of the antitrust laws. The legality of the provision under the antitrust laws hinged on whether the provision was permissible under the NLRA. Therefore, it was necessary for the district court to determine whether the contractual provision was permissible under the NLRA in order to decide if it was an antitrust violation.

Here, unlike *Connell*, there is no independent federal remedy to which the successorship issue is collateral. The Bankruptcy Court had jurisdiction to determine the scope of Goodman's discharge. 28 U.S. C. § 157(b)(2)(I). But that issue is now decided: The District Court correctly ruled that Goodman's discharge does not shield him from liability for post-petition conduct that makes him an alter ego of EG and GPP. In light of that ruling, there is no reason for the Bankruptcy Court to decide the successorship issue, because no bankruptcy issue hinges on the successorship determination. If GASC and Goodman are successors, they are not shielded by the Bankruptcy Code, and the NLRB proceedings may not be enjoined. If GASC and Goodman are not successors, they will not be subject to liability under the NLRA, in which event there would be no reason to enjoin the NLRB proceedings.

Thus, any resolution of the successorship issue need not conflict with the Bankruptcy Code or with Goodman's discharge. Only if the NLRB attempts to hold Goodman liable for his pre-petition obligations would there be a conflict with Goodman's bankruptcy discharge. But the NLRB's complaint does not assert such a claim. It is possible that in resolving the successorship issue the Board, though ostensibly examining post-petition conduct, might take into account some aspect of pre-petition conduct. If that occurs and remains uncorrected on a petition for review, the exercise of the Board's jurisdiction would to that extent have made an inroad on the jurisdiction of the Bankruptcy Court. But we think that risk is rather slight and surely not significant enough to warrant losing the benefit of the Board's expertise in all successorship cases involving discharged debtors. Therefore, instead of remanding the successorship issue to the Bankruptcy Court, the District Judge should have lifted the Bankruptcy Court's injunction and allowed the Labor Board to proceed in its adjudication of the successorship claim against Goodman and GASC.

Our conclusion is not inconsistent with *NLRB v. Superior Forwarding, Inc.*, 762 F.2d 695 (8th Cir.1985), on which Goodman relies. *Superior Forwarding* held that in a Chapter 11 reorganization, a bankruptcy court may enjoin the Labor Board from proceeding with hearings on unfair labor practice charges arising from a debtor's unilateral modification or rejection of a collective bargaining agreement, when those

proceedings would threaten the assets of the debtor's estate. The Eighth Circuit ruled that the issue of whether an alleged unfair labor practice stemmed from rejection of an existing contract or from failure to bargain over terms of a new agreement was a question of contract construction, not labor law. Therefore, the Eighth Circuit ruled, that issue could be determined by the bankruptcy court in deciding whether to enjoin NLRB adjudication of the unfair labor practice charge. Whether or not we would agree with the Eighth Circuit's view that only contract law was in dispute, the Court of Appeals did not permit the bankruptcy court to determine an issue within the primary jurisdiction of the Labor Board; rather, it determined only that the old contract/new contract issue was not within the Labor Board's primary jurisdiction.

■ Judge Telesca acknowledged that the Bankruptcy Court had little or no expertise in resolving unfair labor practice issues under the NLRA. But he noted that the Union and the NLRB had failed to invoke the mandatory withdrawal provisions of 28 U.S.C. § 157(d).[2] 90 B.R. at 61 n. 1. We do not agree that the Labor Board's failure to invoke section 157(d) affects the determination that the Board has primary jurisdiction over the successorship issue. Section 157(d) deals with withdrawal of a case from the Bankruptcy Court to the District Court. Here, the Board correctly maintains that neither the Bankruptcy Court nor the District Court have jurisdiction to determine the successorship issue. Moreover, a party's failure to invoke the mandatory withdrawal provisions of Section 157(d) does not preclude the District Court from withdrawing a case *sua sponte*.

### Conclusion

We affirm the District Court's rulings that GASC has no standing to invoke the

Bankruptcy Court's jurisdiction and that Goodman's discharge does not shield him or GASC from liability for EG's and GPP's obligations if they are determined to be alter egos of EG and GPP. We reverse the District Court's ruling that the Bankruptcy Court has jurisdiction to determine whether Goodman and GASC are successors to EG and GPP. Instead of remanding that issue to the Bankruptcy Court, the District Court should have reversed the Bankruptcy Court's order and allowed the NLRB proceeding to go forward. We remand the case to the District Court for entry of an order consistent with this opinion.

---

**2.** Section 157(d) provides:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a

party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.